IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DIANA ESTRADA, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL NO.<br>SA-18-CV-00002-DAE |
| THE COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,[1] | § § § § | |
| Defendant. | § § § | |

# ORDER

This order concerns Plaintiff's request for review of the administrative denial of her application for disability insurance benefits ("DIB") under Title II. 42 U.S.C. §§ 405(g), 1383(c)(3). After considering Plaintiff's Opening Brief [#18], Defendant's Brief in Support of the Commissioner's Decision [#20], Plaintiff's Reply Brief [#21], the transcript ("Tr.") of the Social Security Administration ("SSA") proceedings [#14], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that the ALJ erred in failing to adequately consider the opinion of the only examining psychological specialist in the record—Dr. Darrel Parisher, Ph.D.—in evaluating the severity of Plaintiff's mental impairments and Plaintiff's residual functional capacity. Accordingly, the ALJ's determination that Plaintiff has no mental limitations is not supported by substantial evidence, and the Court will vacate the

---

[1] Nancy A. Berryhill no longer holds the title of Acting Commissioner, and no other Acting Commissioner has been named. The office of Commissioner is presently vacant, and the caption has been amended accordingly.

1

Commissioner's decision and remand this case for further fact-finding consistent with this opinion.

**I. Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order because the parties have consented to the jurisdiction of a United States Magistrate Judge [#12, #13].

**II. Factual Background**

Plaintiff Diana Estrada filed her application for DIB on March 5, 2015, alleging a disability onset date of November 17, 2014. (Tr. [#14] 194.) At the time of her DIB application, Plaintiff was a 60-year-old female with a high-school education. (Tr. 194, 225.) Plaintiff has prior work experience as an armed guard for a security company, an armed driver, and a bus driver. (Tr. 226, 245, 288–94.) The medical conditions upon which Plaintiff based her initial DIB application include diabetes, asthma, memory loss, high cholesterol, anxiety, depression, obesity, and issues with her weight-bearing joints. (Tr. 224.) Plaintiff's application for DIB was denied initially on September 1, 2015. (Tr. 99–111.) Plaintiff's application was denied again upon reconsideration on November 19, 2015. (Tr. 112–25.)

Following the denial of her claim, Plaintiff requested an administrative hearing. (Tr. 138.) Plaintiff and her attorney attended the administrative hearing before Administrative Law Judge ("ALJ") Katherine W. Brown on March 9, 2017. (Tr. 65–98.) Plaintiff, vocational expert ("VE") Mr. Stinson, and medical expert ("ME") Dr. Cox provided testimony at the hearing. (*Id.*)

The ALJ issued an unfavorable decision on June 19, 2017. (Tr. 48–59.) The ALJ found that Plaintiff met the insured status requirements of the SSA, and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff

has not engaged in substantial gainful activity since November 17, 2014, the alleged disability onset date. (Tr. 50.) At step two, the ALJ found Plaintiff to have the following severe impairments: diabetes mellitus, osteoarthritis of the right knee, low back pain, and obesity. (*Id.*) At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations and therefore Plaintiff was not presumptively disabled. (Tr. 52–53.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work, except Plaintiff can stand and/or walk for a maximum of six hours in an eight-hour workday with normal breaks; can sit for a maximum of six hours in an eight-hour workday with normal breaks; can never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas. (Tr. 53–57.) Then, considering Plaintiff's age, educational factors, work experience, and RFC, as well as the testimony of the VE and ME, the ALJ found Plaintiff was capable of performing her past relevant work as a bus driver as this work was actually performed, at the light exertional level. (Tr. 57–58.) In the alternative, the ALJ found that Plaintiff could perform work as a security guard and a merchant patroller. (Tr. 58.) Accordingly, the ALJ determined that Plaintiff was not disabled, and therefore not entitled to receive DIB. (Tr. 58.)

Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on November 15, 2017. (Tr. 1–7.) On January 2, 2018, Plaintiff filed the instant case, seeking review of the administrative determination.

## III. Governing Legal Standards

**A.     Standard of Review**

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[2] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Four elements of proof are weighed by the Court in determining if substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience. *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve. *Id.*

While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See*

---

[2] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479 (N.D. Tex. 2001).

**B.     Entitlement to Benefits.**

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to do his previous work, and cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant amount in the national economy—regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

**C.     Evaluation Process and Burden of Proof.**

As noted above, SSA regulations require that disability claims be evaluated according to a five-step process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2016). In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452–53 (citing 20 C.F.R. § 404.1572(a)–(b)). An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b).

Then, at the second step, the ALJ determines whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that

5

is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (internal quotation omitted). An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 ("the Listings") of the regulations will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). If the claimant does not qualify under the Listings, the evaluation continues to the fourth step. Before commencing the fourth step, however, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. *See also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).

At the fourth step, the ALJ reviews the RFC assessment and the demands of his past relevant work. 20 C.F.R. § 404.1520(f). If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made. *Id.* If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the claimant's ability—given the claimant's residual capacities, age, education, and work experience—to do other work. 20 C.F.R. § 404.1520(g). If a claimant's impairment precludes him from performing any other type of work, he will be found to be disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV. Analysis

Plaintiff claims two points of error in this case: (1) the ALJ erred in failing to consider the opinion of Dr. Darrel Parisher, Ph.D., in evaluating the severity of Plaintiff's impairments at step two and in determining Plaintiff's RFC before step four; and (2) the ALJ erred in failing to consider Plaintiff's exemplary work history when making her credibility assessment of Plaintiff. Having considered the arguments of the parties, the record in this case, and the governing law, the Court concludes that the ALJ erred in failing to sufficiently consider Dr. Parisher's opinion and that this error was not harmless. The Court, therefore, does not reach the issue regarding Plaintiff's work history.

**A.      The ALJ erred in failing to sufficiently consider Dr. Parisher's opinion.**

The ALJ erred in failing to sufficiently consider Dr. Parisher's opinion in evaluating the severity of Plaintiff's mental limitations at step two and in determining Plaintiff's residual

functional capacity. At step two, the burden of proof rests on Plaintiff to show she has a medically determinable impairment that qualifies as severe. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). An impairment is considered severe if it significantly limits a claimant's physical or mental ability to do basic work activities. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). It is not severe if it is only a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities. *Id.*

The Social Security regulations set forth a psychiatric review technique—also known as the "special technique"—for evaluating mental impairments at all levels of the administrative review process. 20 C.F.R. § 404.1520a (effective Jan. 17, 2017 to Mar. 27, 2017). The special technique identifies four broad functional areas that the ALJ must consider in evaluating whether a claimant has a mental impairment: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.[3] *Id.* at § 404.1520a(c)(3). At step two, the ALJ must rate the degree of a claimant's limitations as to these four functional areas on a five-point scale (none, mild, moderate, marked, and extreme). *Id.* at § 404.1520a(c)(4). The ALJ's written decision must incorporate specific findings as to the degree of limitation in each of these four functional areas. *Id.* at § 404.1520a(e)(4). After rating the degree of functional limitation resulting from a mental impairment, the ALJ must determine the severity of the impairment at step two. *Id.* at § 404.1520a(d). If the ALJ rates the degree of

---

[3] Prior to January 17, 2017, the four functional areas were (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. According to the supplementary information in the Federal Register, the federal courts are to review any final decisions "using the rules that were in effect at the time [the ALJ] issued the decisions." 81 Fed. Reg. 66,138 (Sept. 26, 2016). Because the ALJ issued her opinion on March 9, 2017, the January 17, 2017 amended version of the regulation governs.

limitation in any functional area as "none" or "mild," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [an] ability to do basic work activities." *Id.* at § 404.1520a(d)(1). The regulations do not conversely specify which findings, if any, dictate a conclusion that a given impairment is severe. *See id.*

The ALJ in this case concluded that Plaintiff's "medically determinable mental impairments of major depressive disorder, anxiety, and neurocognitive disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities" and are therefore non-severe. (Tr. 50–51.) In reaching this conclusion, the ALJ evaluated the four functional areas identified above, concluding that Plaintiff only has mild limitations in understanding, remembering, or applying information; no limitations in interacting with others; mild limitations in the ability to concentrate, persist, or maintain pace; and mild limitations in the ability to adapt or manage herself. (Tr. 51.) Because the ALJ found no more than mild impairments in any of the functional areas, she concluded Plaintiff's mental limitations are non-severe, citing to 20 C.F.R. § 404.1520a(d)(1). (Tr. 51.)

Plaintiff contends that the ALJ erred in her step two analysis because she failed to consider the medical opinion of the only examining psychological specialist in the record—Dr. Parisher—in reaching her conclusion that Plaintiff's mental impairments are non-severe. The medical records indicate that Dr. Parisher examined Plaintiff on August 4, 2015 and performed a number of psychological tests to evaluate Plaintiff's mental condition, including the Wechsler Adult Intelligence Scale, the Wide Range Achievement Test, and the Wechsler Memory Scale. (Tr. 662–665.) Based on these tests, Dr. Parisher concluded that Plaintiff's intellectual and academic skills "seem to be good" but "there are significant issues with memory and the

prognosis for this to be an ongoing and more prevalent problem is uncertain." (Tr. 665 (quote unaltered).) More specifically, Dr. Parisher found that Plaintiff's working memory was in the "low average" range; auditory memory in the "low average" range; visual memory in the "extremely low" range; visual working memory in the "borderline" range; immediate memory is in the "extremely low" range; delayed memory in the "extremely low" range. (Tr. 664.) In his report, Dr. Parisher also noted that Plaintiff had lost her most recent job as a bus driver due to memory problems after she forgot the last stop on her itinerary when driving a bus at a local military base for the third time in one year. (Tr. 661.)

Aside from a string citation to the exhibit number of Dr. Parisher's psychological report, the ALJ did not discuss or note any of Dr. Parisher's findings in rendering her opinion on the severity of Plaintiff's mental impairments. (Tr. 51.) The ALJ simply found that despite Plaintiff's complaints about difficulties with her memory, "she could perform basic household chores, prepare simple meals, manage her finances, shop, drive, and read," as well as watch sports. (Tr. 51.) The ALJ therefore concluded Plaintiff has no more than mild limitations in the functional area involving memory.

There is additional evidence in the record to support Dr. Parisher's findings. Plaintiff testified at the ALJ's hearing that her memory loss is one of her most significant concerns and that it was one of the reasons she was terminated from her employment. (Tr. 78.) Plaintiff stated that she frequently forgets what she is doing or where she is going and that this has occurred while driving her bus route in her last place of employment. (Tr. 78.) The state psychological consultant at the initial level, Dr. Murray Lerner, Ph.D., found that Plaintiff has a severe impairment of an organic brain syndrome and that she has moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 103.) Dr. Lerner found limitations in Plaintiff's

10

memory and concluded that Plaintiff is moderately limited in her ability to remember locations and work-like procedures; markedly limited in her ability to understand and remember detailed instructions and markedly limited to carry out detailed instructions; and moderately limited to maintain attention and concentration for extended periods and to sustain an ordinary routine without special supervision. (Tr. 106.) Dr. Lerner explained that these limitations stemmed from Plaintiff's poor memory. (Tr. 106.) At the reconsideration level, the state psychological consultant, Susan Posey, Psy.D., similarly concluded that Plaintiff suffers from the severe impairment of an organic brain syndrome and has moderate understanding and memory limitations. (Tr. 120.)

Despite this medical evidence, the ALJ found that Plaintiff does not suffer from any severe mental impairment at step two, without any substantive discussion of Dr. Parisher's findings or Plaintiff's claimed memory impairment. The Court is unconvinced that Plaintiff's ability to "watch sports," a passive mental activity, establishes that she is only minimally limited with respect to memory. The Court's string citation to Dr. Parisher's report is insufficient to allow the Court to engage in meaningful review of the ALJ's conclusions with regard to the severity of Plaintiff's mental impairments.

The Commissioner argues that there is evidence to support the ALJ's conclusion that Plaintiff had only mild limitations in the functional area involving memory. The record contains a mental and physical evaluation of Plaintiff by Nurse Practitioner Sue Benson on February 21, 2017. (Tr. 1421–26.) Although nurse practitioners are not acceptable medical sources for purposes of establishing a medically determinable impairment or for rendering a medical opinion, evidence from non-medical sources like Nurse Benson still may be used in evaluating the severity of Plaintiff's impairments and their impact on Plaintiff's ability to function

11

physically or mentally with respect to an RFC determination. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Nurse Practitioner Benson diagnosed Plaintiff with depression and anxiety, but gave her a good prognosis and found her to be unlimited in all mental abilities or aptitudes to do any job. (Tr. 1421–23.) Nurse Benson did not note any memory impairments in her mental evaluation. (Tr. 1421–23.) Additionally, ME Dr. Cox testified at the ALJ's hearing that she had reviewed all the medical evidence of record and found Nurse Practitioner's evaluation to be supported by the record. (Tr. 74–75.) Dr. Cox further testified that she did not find record support for Dr. Parisher's conclusion that Plaintiff's "significant issues with memory" made her prognosis uncertain. (Tr. 73.)

However, the ALJ did not discuss either of these opinions in implicitly dismissing Dr. Parisher's conclusions at step two. Accordingly, the Court can only speculate as to how the ALJ weighed and evaluated the conflicting opinions in the medical record. It is well established that an ALJ's decision must stand or fall on the reasons articulated by the ALJ in her decision, and the ALJ's reasons do not rely on substantial evidence here. *See Newton*, 209 F.3d at 455. Post hoc rationalizations by the Commissioner or this Court are not acceptable. *See id.* The Commissioner's attempt to point to this evidence in the record after the fact does not cure the ALJ's failure here to articulate the reasons for his findings.

To be clear, if Plaintiff's only argument were this step two error, the Court would be compelled to affirm the Commissioner's decision, despite the identified error. The Fifth Circuit has stated that a failure to make a severity finding at step two is not reversible error when an ALJ continues with the sequential evaluation process, as here. *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. App'x. 899, 903 (5th Cir. 2010) (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)). This case did not hinge upon a denial of DIB due to the finding of a lack of a severe

impairment at step two, and the ALJ proceeded to the other steps of the evaluation process, including a determination of Plaintiff's RFC. (Tr. 53–67.) But here Plaintiff also argues—convincingly—that the ALJ's failure to consider Dr. Parisher's opinion resulted in an erroneous RFC determination without the inclusion of any mental limitations. The Court agrees with Plaintiff that the ALJ's RFC analysis evidences the same unexplained disregard for Dr. Parisher's opinion as the ALJ's analysis at step two.

Again, the ALJ did not include any mental limitations in Plaintiff's RFC for light work. In doing so, the ALJ explained that she assigned significant weight to ME Dr. Cox's and Nurse Practitioner Benson's opinions that Plaintiff does not have any mental limitations and assigned only light weight to the opinions of Dr. Lerner and Dr. Posey, the state agency psychiatric consultants at the initial and reconsideration levels. (Tr. 56.) Critically, the ALJ then stated that "[t]he record does not contain any opinions from treating or examining physicians indicating the claimant is disabled or has limitations greater than those determined in this decision." (Tr. 56.) Nowhere in the ALJ's RFC determination does she acknowledge or discuss Dr. Parisher's examination and the results of his cognitive testing regarding Plaintiff's memory—the *only* opinion in the record of an examining psychological expert and the *only* opinion containing any results from objective cognitive testing. This was error.

The Social Security Act requires the Commissioner to state the reasons upon which his or her disability determination is based. 42 U.S.C. § 405(b)(1). Although this mandate does not require an ALJ to explain in his or her written determination each piece of evidence contained in the record, *see Black v. Colvin*, No. 2:12-CV-0233, 2014 WL 1116682, at *5 (N.D. Tex. Mar. 20, 2014) (collecting cases), an ALJ is not permitted to ignore evidence that does not support her decision. *Jefferson v. Barnhart*, 356 F. Supp. 2d 663, 675 (S.D. Tex. 2004). This is particularly

13

true where the evidence ignored is "significantly probative" on the inquiry at hand. *Jefferson*, 356 F. Supp. 2d at 675 (quoting *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)). In short, an ALJ "cannot reject a medical opinion without explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (internal quotation omitted). An implicit rejection of an examining source's opinions is insufficient. *Id.* (relying upon the "general rule that rejecting a conflicting medical opinion nevertheless requires an explanation").

The Social Security regulations dictate that an ALJ must evaluate every medical opinion received and is to consider the following factors in deciding the weight given to any medical opinion: (1) examining relationship; (2) length and extent of the treatment relationship; (3) supportability with laboratory findings; (4) consistency; and (5) specialization. 20 C.F.R. § 404.1527(c). Generally, more weight should be given to the opinion of a source who has examined the Plaintiff, who is a specialist in the relevant discipline, and who conducted laboratory testing to support the opinion. *Id.* The ALJ failed to explain why she decided to give no weight to Dr. Parisher's opinion despite the fact that he was an examining specialist who conducted the only cognitive testing performed on Plaintiff regarding her memory and such testing supported his conclusions. In summary, the ALJ erred when he failed to discuss the weight given to Dr. Parisher's opinion.

**B.      This error was not harmless.**

The ALJ's failure to discuss Dr. Parisher's opinion and the weight he attributed it was not harmless, as it affected Plaintiff's substantial rights and the outcome of the proceedings. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) ("procedural perfection is not required unless it affects the substantial rights of a party"); *Nicaragua v. Colvin*, No. 3:12-CV-2109, 2013 WL 4647698, at *5-7 (N.D. Tex. Aug. 29, 2013) (remanding where ALJ failed to explain what

weight he gave to examining physician's opinion, which conflicted with ALJ findings); *Singleton v. Astrue*, No. 3:11-CV-2332, 2013 WL 460066, at *3-6 (N.D. Tex. Feb. 7, 2013) (remanding where ALJ failed to explain weight given to examining physician).

It is the ALJ's responsibility to weigh the evidence, and the Court is unable to discern what the ALJ would have done had he weighed all relevant evidence of record, including Dr. Parisher's opinion, which included limitations beyond those recognized by the ALJ in his RFC determination. *See Nicaragua*, 2013 WL 4647698, at *7. Had the ALJ given proper consideration to Dr. Parisher's assessment of Plaintiff's mental limitations, the ALJ might have reached the conclusion that Plaintiff could no longer perform her past relevant work as a bus driver. This is significant because in that case, the burden of proof would shift to the Commissioner to identify employment available to Plaintiff in the national economy, despite any identified mental impairments. *See id.* Although the ALJ identified an alternative holding that the ALJ could perform work as a security guard and a merchant patroller (Tr. 58.), he made this determination based on an RFC that did not adequately consider Dr. Parisher's assessment of Plaintiff's mental limitations.

In light of the Court's conclusion that remand is required in this case due to the error surrounding Dr. Parisher's opinion, the Court need not reach Plaintiff's second point of error regarding her stellar work history. The ALJ should, however, consider Plaintiff's work history on remand in evaluating her credibility as to her claimed mental impairments. *See* 20 C.F.R. § 404.1529(c)(3).

## V.  Conclusion

Based on the foregoing, the Court finds that the ALJ erred in failing to sufficiently consider the opinion of Dr. Parisher, an examining specialist, and this error was not harmless. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **VACATED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further findings and proceedings in accordance with this opinion.

SIGNED this 5th day of February, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE